# EXHIBIT A

| | |
|---|---|
| **LOANZON SHEIKH LLC**<br>197 State Highway 18<br>PMB 4175, Suite 3000<br>East Brunswick, NJ 08816<br>(732) 398-8600<br>By:  Umar A. Sheikh, Esq.<br><br>*Local Counsel for Plaintiff*<br>*Sperry Associates Federal Credit Union* | **SCOTT A. ROSENBERG, P.C.**<br>265 Post Avenue<br>Suite 120<br>Westbury, NY 11590<br>(516) 877-7205<br>By:  Scott A. Rosenberg, Esq.<br>        Kenneth J. Pagliughi, Esq.<br>        *(Pro Hac Vice Motions to be Filed)*<br><br>*Counsel for Plaintiff*<br>*Sperry Associates Federal Credit Union* |

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| SPERRY ASSOCIATES FEDERAL CREDIT UNION,<br><br>                                          Plaintiff,<br><br>-against-<br><br>CUMIS INSURANCE SOCIETY, INC.,<br><br>                                          Defendant. | Civil Action No. 09-_____<br><br><br>**COMPLAINT** |

The Plaintiff, Sperry Associates Federal Credit Union ("Plaintiff"), by and through its attorneys, Loanzon Sheikh, LLC and Scott A. Rosenberg, P.C., complain of the defendants as follows:

### PARTIES

1. Plaintiff is, and at all relevant times was a federal credit union organized and presently operating and conducting business in accordance with the laws of the United States of America, with a principal place of business located at 24000 Jericho Turnpike, Garden City Park, New York.

2. Upon information and belief, and at all times hereinafter mentioned, defendant Cumis Insurance Society, Inc. ("Cumis") is a private shareholder owned corporation established in 1972, incorporated in the State of Wisconsin, and its principal place of business is located at 5910 Mineral Point Road, Madison, WI 53701.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this case and the parties named herein pursuant to 28 U.S.C. §1332 on the basis of diversity as the amount in controversy exceeds $75,000, exclusive of interest and cost, and is between citizens of different States.

4. Venue in this Court is proper pursuant to 28 U.S.C. §1391(a).

5. The Plaintiff's action is one for declaratory relief pursuant to 28 U.S.C. § 2201(a).

## SUMMARY OF ACTION

6. This is an action for declaratory relief under the Cumis Form 500 Bond (the "Bond"), issued by Cumis to Sperry. Sperry contends, that it has suffered losses in connection with the sale of real estate loans issued to its members, to the secondary market (the "Losses"), that fall within the coverage provided under the Bond. Cumis contends that coverage under the Bond does not extend to the Losses claimed by Sperry. Sperry, having conducted an investigation into the Losses, and after having coverage counsel review the coverage form, firmly believes that that coverage for the Losses fit squarely within the four corners of the Cumis bond, and therefore brings this action to have it declared that Cumis has a duty under the Bond form to indemnify Sperry for the Losses.

## SUMMARY OF THE MORTGAGE SALE SCHEME GIVING RISE TO THE LOSSES

7. The Losses arises from a massive fraud orchestrated by CU National Mortgage, LLC ("CUN") and its affiliated corporation U.S. Mortgage Corp. ("USM"), the former mortgage loan servicer and originator utilized by Plaintiff. The scheme appears to have been ongoing for at least four (4) years and continued until February 2009 after significant escalation of the fraudulent transactions by USM in the second half of 2008. The fraudulent scheme of CUN and USM was masterminded and facilitated by partners, officers or employees of the corporations.

8. The scheme involved the unauthorized sale by USM and/or CUN to the Federal National Mortgage Association ("FNMA") of a large number of mortgages owned by numerous credit unions that contracted with CUN and/or USM for the servicing of the mortgages. CUN and USM did not obtain the approval or consent for the sale of these mortgages and they did not turnover the proceeds of the sales to the concerned credit unions. To date, it is believed that the scheme involved more than 20 credit unions, in excess of 200 loans and more than $130 million in mortgage value.

9. With respect to Plaintiff, CUN and USM sold 27 mortgages owned by Plaintiff with a face value of approximately $9.49 million (the "Subject Mortgages," and when referred to in the singular, a "Subject Mortgage") as part of the above-described scheme. Plaintiff had not given any prior authorization for the sale of any of the Subject Mortgages to FNMA, was not advised after the fact by CUN or USM that the Subject Mortgages had been sold, did not receive any of the proceeds of the sale of the Subject Mortgages that FNMA purportedly paid to CUN and/or USM. To conceal this fraudulent conduct, and as part of the scheme, after the sales of the Subject Mortgages CUN and USM continued to deliver to Plaintiff monthly and/or periodic reports and summaries of all of the mortgages owned by Plaintiff and serviced by CUN that reflected that the Subject Mortgages were still owned by Plaintiff and that Plaintiff was receiving monthly net payments from the concerned mortgagors through CUN's servicing function.

10. Partners, officers or employees of CUN, USM perpetrated the fraud scheme by preparing and executing two sets of allonges to promissory notes held and owned by Plaintiff and assignments of the mortgages that secured the notes for the Subject Mortgages. The first set would be by Plaintiff to USM and then the second set would be the ones that would affect the transfer of the Subject Mortgages to FNMA. In all instances an employee of CUN, USM executed the allonges and

assignments in the name of Plaintiff that purported to transfer the Subject Mortgages from Plaintiff to USM fraudulently representing that the employee was an "AVP" of Plaintiff. It is believed that AVP stands for assistant vice president.

11. In some cases rather than using the original note of a Subject Mortgage, whether because the original note was not available to USM and/or CUN, blank notes were reproduced by USM/CUN employees and the borrower's signature was forged on the note prior to the execution of the particular allonge and assignment. Ultimately these forged notes and the true notes on hand that USM and/or CUN had access to would be delivered by USM/CUN to FNMA as part of the purported sale of the Subject Mortgages.

12. By virtue of the forged notes, fraudulent allonges and fraudulent assignments, USM/CUN were able to transact the "sale" of the Subject Mortgages to FNMA, without ever receiving authority from, advising, notifying, or otherwise indicating to Plaintiff that any of the Subject Mortgages, all of which were owned by Plaintiff, had been, or were being "sold" to FNMA. As far as Plaintiff knew, the Subject Mortgages were being serviced by USM/CUN pursuant to the Mortgage Full Services Agreement ("Service Agreement"), which Sperry had entered into with CUN.

13. USM was the subject of a federal investigation concerning the potential scheme and fraud involving the mortgages of the numerous credit unions that engaged CUN to perform servicing functions for their mortgages. This investigation culminated in a raid of CUN and USM offices in February 2009 by federal officials. As a result of that raid, and the seizure of records, documents, data bases and information of CUN and USM and the consequential impact on their business operations, USM filed a voluntary chapter 11 proceeding in the U.S. Bankruptcy Court for the District of New Jersey in February 2009, and in early April 2009, CUN also filed a voluntary petition upon a determination that CUN was a separate corporate entity and not an operating division of USM. USM

and CUN remain in chapter 11 and the cases are being jointly administered by order of the Bankruptcy Court.

14. CUN, USM partners, officers or employees have admitted that they defrauded the credit unions, including Plaintiff, by endorsing the note allonges and executing the mortgage assignments without the credit unions' knowledge or authorization. In addition they admitted that they took numerous steps to conceal their fraud. With respect to the fraud committed against Plaintiff, those steps included directions to CUN's servicing manager to generate reports for Plaintiff falsely stating that the Subject Mortgages that had been sold to FNMA were still in their portfolios, directing the service manager to modify data in the servicing system, directing USM's chief financial officer to pay off or make monthly payments to Plaintiff for the Subject Mortgages; and causing the chief financial officer and another subordinate personnel of USM and/or CUN to falsify mortgage related documents.

15. The Service Agreement between CUN and Sperry outlined the services to be provided by CUN which included: loan origination, closing, servicing and if advised by the credit union that it did not wish to maintain a loan its portfolio, the sale of the loan on the secondary market. Attached to and incorporated by reference in the Service Agreement was Exhibit A – Loan Servicing Agreement. The Loan Servicing Agreement set forth the terms under which loans retained in the Sperry portfolio would be serviced by CUN. The terms of the Loan Servicing Agreement did not relate to, or provide for the sale of any serviced loans. The Service Agreement and Exhibit A – Loan Servicing Agreement, are annexed hereto as Exhibit "A".

## CUMIS DECLARATORY ACTION

16.     Cumis issued a Bond in Madison, Wisconsin to Sperry effective on or about July 6, 2008. On or about February 13, 2009, Sperry provided notice under that Bond with respect to Losses resulting directly from the acts of CUN and USM partners, officers or employees.

17.     On or about September 11, 2009 Sperry provided Cumis with a signed Proof of Loss, a copy of which is annexed here as Exhibit "B".

18.     The parties then subsequently entered into a Tolling Agreement, a true copy of which is annexed here as Exhibit "C", on or about September 16, 2009, whereby Cumis agreed to refrain from investigating the claim asserted by the Sperry, and both Cumis and Sperry agreed that they would take no further actions to pursue or adjudicate coverage for the Losses. The agreement was to remain in force through December 30, 2009. Prior to entering into this agreement, Cumis failed to disclose to Sperry, that Cumis had on August 31st, 2009 already filed a declaratory action in the State of Wisconsin, County of Dane naming Sperry, along with 26 other credit unions that suffered similar losses as defendants. A true copy of Summons and Complaint filed by Cumis in Wisconsin is annexed here as Exhibit "D". The Cumis action sought declaratory relief, directing that Cumis has no duty under the Bond to indemnify the credit unions including Sperry, for the Losses resulting directly from the acts committed by CUN/USM partners, officers or employees.

19.     On or about November 17, 2009 Sperry's counsel received a call from Cumis' general counsel advising that a declaratory action had been filed in Wisconsin. Cumis' counsel acknowledged that the parties were currently bound by a tolling agreement, and therefore requested that Sperry waive the tolling and agree to consent to service in the Wisconsin Declaratory action.

20.     While Sperry's counsel spoke with Cumis' counsel on three occasions regarding waiving the tolling agreement, Sperry never waived its rights under the agreement and was never

served in the Wisconsin matter. Pursuant to Wis. Stat. § 801.02, which requires that a summons and complaint be served within 90 days of the date on which they were filed, the Cumis action as to Sperry is dismissed due to lack of personal jurisdiction.

21. The Cumis action was subsequently removed to Federal Court in the Western District of Wisconsin on December 17th, 2009, Sperry has not been served in that matter. Sperry is now bringing this action, in this District, as a declaration of coverage under the Cumis bond is ancillary to litigation currently pending here, namely Sperry Associates Federal Credit Union v. Federal National Mortgage Association, 2:09-cv-4782 (JAG)(MCA), and Picatinny Federal Credit Union v. Federal National Mortgage Association, 2:09-cv-1295 (JAG)(MCA).

## THE CUMIS BOND

22. Coverage A of the Bond provides:

> We will pay you for your losses resulting directly from dishonest acts committed by an "employee" or "director", acting alone or in collusion with others.
>
> Such dishonest acts must be committed by the "employee" or "director" with the intent to:
>
> a. Cause you to sustain such loss; or
>
> b. Obtain an improper financial benefit for the "employee" or "director", or any other person or entity.
>
> However, if some or all of your loss resulted directly or indirectly from a "loan" or "trade", that portion of the loss is not covered unless you establish that portion of the loss involving a "loan or "trade' resulted directly from dishonest acts committed by the "employee' or "director", acting alone or in collusion with others, with the intent to:
>
> 1) Cause you to sustain such loss; and
>
> 2) Obtain improper financial benefit for the "employee" or "director," or a financial benefit for any other person or entity.

      As used in this coverage, an improper financial benefit does not include any employment benefits received in the course of employment including salaries, commissions, fees, bonuses, promotions, awards, profit sharing, business entertainment or pensions.

23.   "Employee" is defined under the Bond in pertinent part as follows:

    1. "Employee" means persons who were, are, or may be in the future, acting under your direction and control in the conduct of your business and while in the course or scope of performance of their assigned duties; and

        a. Paid a regular wage or salary by you or by an employment service who provides such persons to you; or

*   *   *

    3. For Employee Or Director Dishonesty Coverage only, "employee" also means:

*   *   *

        f. "Servicing Contractors". All persons employed by any "servicing contractor," including its partners, officers, and employees, will collectively be considered one "employee" for all purposes of this Bond, except for the Termination Or Limitation Of Coverage For Employee Or Director Condition.

    4. Unless specifically listed in paragraphs 1.,2., or 3. above, "employee" does not mean:

        a.   Independent contractors; or

        b.   Agents, meaning persons authorized by you to act for you; or

        c.   Brokers; or

        d.   Persons employed by the Federal Reserve system; or

        e.   Consultants; or

      f. Persons acting on behalf of a "service center" including those who might otherwise be your "employee."

24. "Servicing contractor" is defined under the Bond as follows:

any person or entity duly authorized by you to perform any of the following services and only while performing such services:

    a. Collect and record payments on real estate mortgage or home improvement loans; or

    b. Establish tax or insurance escrow accounts on real estate mortgage or home improvement loans, made, held or assigned by you; or

    c. Manage real property owned by you or under your supervision and control.

"Servicing contractor" includes the partners, officers and employees of entities duly authorized by you to perform any of the above services.

25. Coverage S of the Bond provides:

We will pay you for your loss resulting directly from the "forgery" or "alteration" of an "instrument."

26. "Forgery" is defined under the Bond as:

affixing the handwritten signature, or a reproduction of the handwritten signature, of another natural person without authorization or ratification, and with the intent to deceive.

A signature written on an electronic pad, which captures the signature for purposes of creating an electronic digitized image of a handwritten signature, is treated the same as a handwritten signature. Any other form of electronic signature or "digital signature" is not treated as a handwritten signature, or a reproduction of a handwritten signature.

However, a signature that consists in whole or in part of one's own name signed with or without authority, in any capacity for any purpose, is not a "forgery."

27. "Instrument" is defined under the Bond as:

an original: mortgage, "document of title," deed, contract for deed, deed of trust, promissory note, "security agreement." Money order, certificate of deposit, "certified securities," bond coupon, interim receipt for a security, assignment of mortgage, check, draft, share draft, bill of exchange, "withdrawal order," "letter of credit," "acceptance," passbook held as collateral, or "certificate of origin or title."

"Instrument" also means a written instruction to the insurer of an "uncertificated security" requesting that the transfer, pledge, or release from pledge, of the "uncertificated security" specified, be registered.

### FIRST CLAIM FOR RELIEF
### (DECLARATORY RELIEF)

28. Sperry repeats and re-alleges the allegations contained within paragraphs 1 through 28 above as though fully set forth herein.

29. Sperry, upon information and belief, alleges that pursuant to the terms and conditions of the Bond, Cumis has a duty to indemnify Sperry under Coverage Part A of the bond, for losses resulting directly from acts committed by CUN, USM and any partner, officer or employee of those entities.

30. Sperry, alleges that the Bond definition of "employee" extends coverage to CUN and/or USM as "Servicing Contractors" as defined by the bond.

31. Sperry, alleges that the services provided by CUN/USM under the Mortgage Full Services Agreement, and more specifically Exhibit A of that document, the Loan Servicing Agreement, fall within the services for which coverage is extended to "Servicing Contractors" under the bond.

32. Sperry alleges that the Losses of the Subject Mortgages were only related to loan servicing, as the Subject Mortgages were to be held in the Sperry portfolio and were not to be transferred or sold on the secondary market.

33.     Sperry alleges that the Losses resulted directly from acts committed by CUN, USM and/or any partner, officer or employees of those entities while acting as "employees" of Sperry as defined by the "Servicing Contractors" extension of the Bond.

34.     Upon information and belief, CUN, USM and/or partners, officers or employees of those entities utilized the misappropriated and converted funds delivered to CUN by FNMA for the transfer of the Subject Mortgages for their own benefit triggering Coverage Part A of the Bond.

35.     Sperry, upon information and belief, alleges that Cumis disputes Sperry's contention that it has a duty under the Bond to indemnify Sperry for any Losses resulting from acts committed by CUN, USM and/or any partner, officer or employee of those entities.

36.     Based on the foregoing, an actual, present and justiciable controversy now exists between Sperry and Cumis as to the rights duties and obligations of each party under the Bond. Sperry will suffer irreparable injury unless the relief requested is granted.

### SECOND CLAIM FOR RELIEF
### (DECLARATORY RELIEF)

37.     Sperry repeats and re-alleges the allegations contained within paragraphs 1 through 37 above as though fully set forth herein.

38.     Sperry, upon information and belief, alleges that, pursuant to the terms and conditions of the Bond, Cumis has a duty to indemnify Sperry under Coverage Part S of the bond, for losses resulting directly from acts of forgery committed by CUN, USM and any partner, officer or employee of those entities.

39.     Sperry alleges that the Bond definition of "forgery" extends coverage to those instances where, upon information and belief CUN, USM and/or any partner, officer or employees of those entities forged the signature of borrowers on notes of the Subject Mortgages.

40. Sperry alleges that the Losses in these instances resulted directly from acts committed by CUN, USM and/or any partner, officer or employees of those entities while acting as "employees" and from forgery, triggering Coverage part S of the bond.

41. Sperry, upon information and belief, alleges that Cumis disputes Sperry's contention that it has a duty under the Bond to indemnify Sperry for any Losses resulting from acts of forgery committed by CUN, USM and/or any partner, officer or employee of those entities.

42. Based on the foregoing, an actual, present and justiciable controversy now exists between Sperry and Cumis as to the rights duties and obligations of each party under the Bond. Sperry will suffer irreparable injury unless the relief requested is granted.

**WHEREFORE**, Plaintiff respectfully requests that this Court declare the rights and obligations of the parties, under the terms and provisions of the Bond as follows:

(1) On the First Claim for Relief for Declaratory Relief under Coverage Part A of the Bond, that Cumis is under a duty to indemnify Sperry for any Losses resulting directly from acts committed by CUN, USM and or any partner, officer or employee of those entities, while acting as "employees" of Sperry subject to the terms of the Bond.

(2) On the Second Claim for Relief for Declaratory relief under Coverage Part S of the Bond, that Cumis is under a duty to indemnify Sperry for any Losses resulting directly from acts of forgery committed by CUN, USM and any partner, officer or employee of those entities.

(3) That Sperry recover from Cumis such costs, disbursements, and attorney fees as may be allowed by law, and that the court award such other and further relief as the court may deem just and equitable.

DATED: January 5, 2010
East Brunswick, NJ

**LOANZON SHEIKH LLC**

*/s/ Umar A. Sheikh*
Umar A. Sheikh, Esq. (US 5497)

*Local Counsel for Plaintiff*
*Sperry Associates Federal Credit Union*

197 Route 18 South
PMB 4175, Suite 3000
East Brunswick, NJ 08816
(732) 398-8600

**SCOTT A. ROSENBERG, P.C.**
By: Scott A. Rosenberg, Esq.
Kenneth J. Pagliughi, Esq.
*(Pro Hac Vice Motions to be filed)*
*Counsel for Plaintiff*
*Sperry Associates Federal Credit Union*
265 Post Avenue, Suite 120
Westbury, NY 11590
(516) 877-7205

### DESIGNATION OF TRIAL COUNSEL

Plaintiff Sperry Associates Federal Credit Union hereby appoints Umar A. Sheikh, Esq. of the law firm of Loanzon Sheikh LLC, and Scott A. Rosenberg (upon admission *pro hac vice*) of the law firm of Scott A. Rosenberg, P.C., as its trial counsel in this matter.

DATED: January 5, 2010

*/s/ Umar A. Sheikh*
Umar A. Sheikh, Esq. (US 5497)

### CERTIFICATION PURSUANT TO LOCAL RULE 11.2

I hereby certify that the within matter in controversy is not the subject of any other pending action. With respect to the action named above that Defendant had previously commenced against Plaintiff in the State of Wisconsin, by operation of Wisconsin law, such action is dismissed as against Plaintiff herein (and therefore no longer pending) as a result of a failure to acquire jurisdiction over the Plaintiff herein within the requisite time permitted by Wisconsin law.

DATED:      January 5, 2010

/s/ Umar A. Sheikh
Umar A. Sheikh, Esq. (US 5497)

### ATTORNEY STATEMENT PURSUANT TO LOCAL RULE 201.1

Pursuant to Local Rule 201.1, the undersigned, attorney of record for Plaintiff Sperry Associates Federal Credit Union, hereby certifies and declares that the within action does not seek money damages, (but that the amount in controversy exceeds $150,000.00, exclusive of interest and costs and any claim for punitive damages), and the legal issues predominate over the factual issues.