

ATTORNEYS AT LAW
125 BROAD STREET, 39TH FLOOR   NEW YORK, NY 10004-2400

www.sedgwicklaw.com   212.422.0202 *phone*   212.422.0925 *fax*

*arthur.aizley@sedgwicklaw.com*
*valerie.rojas@sdma.com*

July 28, 2011

The Honorable Michael A. Shipp
Martin Luther King Jr. Federal Building & U.S. Courthouse
50 Walnut St., Room 4015
Newark, NJ 07101

Re: *Sperry Associates Fed. Credit Union v. CUMIS Ins. Society, Inc.*
    Case No. 10-CV-00029-DRD-MAS
    Our File No.: 00480-006356

Dear Judge Shipp:

CUMIS Insurance Society ("CUMIS") respectfully submits this letter in reply to Plaintiff Sperry Associates Federal Credit Union's ("Sperry") letter of July 21, 2011.

Sperry essentially outsourced its real estate loan function to CU National.  As a result, CU National originated, processed, marketed, underwrote, serviced and sold mortgage loans on behalf of Sperry.  In this case, Sperry contends that Michael McGrath, Jr. ("McGrath"), the owner of CU National, sold 27 loans to FNMA sometime during the end of 2008 without Sperry's knowledge or authority and did not remit and proceeds from the sale to Sperry.  According to Sperry, McGrath/CU National would first assign the loans from Sperry to CU National's parent (US Mortgage Corp.), and then subsequently assign the mortgage notes from US Mortgage to FNMA to complete the sale.  Sperry also alleges that CU National "covered up" the alleged fraud by providing monthly reports which falsely identified loans in Sperry's portfolio which McGrath had actually sold to FNMA.

Preliminarily, CUMIS notes that the CUMIS Bond provides coverage for employee dishonesty, but not for vendor fraud.  The Bond deems a servicing contractor to be an employee, but only while that servicing contractor is actually collecting and recording payments on mortgages.  Here, the fraud occurred when McGrath sold the loans to FNMA, with the result that there is no coverage under the CUMIS Bond for the acts of either McGrath or CU National.

Nevertheless, in order to rebut Sperry's allegations, CUMIS propounded interrogatories to Sperry to identify which monthly servicing reports Sperry alleges were false, and when its loans were actually sold to FNMA. CUMIS needs this information to determine whether Sperry ever actually received any false monthly servicing reports, and thus rebut Sperry's contention that CU National "covered up" the loan sales.  In response to CUMIS' interrogatories Sperry failed to identify any false reports or state when FNMA

The Honorable Michael A. Shipp
Re:  Sperry Associates Fed. Credit Union v. CUMIS Ins. Society, Inc.
      Case No. 10-CV-00029-DRD-MAS
July 28, 2011
Page 2

purchased the loans.   In addition, as noted above, Sperry has continued to argue, inconsistently, that it did not know when FNMA purchased the loans at issue, but still somehow contends that the monthly servicing reports it received for the last quarter of 2008 were false.

In its July 21, 2011 letter to the Court, Sperry attempts to evade the clear relevancy of this information by arguing that the loans were converted when CU National assigned the mortgage notes from Sperry to US Mortgage (and stating that the dates of the sale of the loans to FNMA is somehow irrelevant).  However, the loans were not truly converted until they were sold to a third party who paid consideration and who did not have notice of the fraud.  Thus, Sperry's position regarding when the notes were converted is wrong as a matter of law as US Mortgage paid no value and had notice of the fraud[1].  Accordingly, it is the date of the sale to FNMA which will determine whether the monthly reports are accurate or false because, until the loans were sold for value, CU National was still holding the loans.[2]

Sperry, therefore, should simply provide the dates which FNMA purchased the loans at issue because those are the dates that will help determine the accuracy of the monthly reports.  Following the last conference call with the Court, Sperry produced a spreadsheet (presumably prepared by FNMA) purporting to establish the dates that a number of Sperry's loans (but not all of the loans at issue) were sold.  However, the spreadsheet is undated, unsigned and of unknown significance and meaning in the overall scheme of FNMA's recording and documentation processes.  Accordingly, producing this spreadsheet is in no way a substitute for providing the requested information in a clear and unequivocal interrogatory response.

As also discussed at the last conference call with the Court, Sperry produced approximately 1.7 million pages of documents to CUMIS on the last day of discovery. CUMIS notes that a production of this magnitude will take a significant amount of time to review, particularly since Sperry has not provided indices or references to which documents are responsive to CUMIS' interrogatories.  Consequently, Sperry's actions have prejudiced CUMIS' ability to fully review the documents produced and conduct all necessary depositions before the discovery and summary judgment deadlines.  Accordingly, and at a minimum, CUMIS respectfully requests that Sperry be compelled to produce indices for the 1.7 million documents just produced, and/or that Sperry be compelled to identify the categories of the documents that it produced by bates number ranges.  In addition, CUMIS requests that it be allowed to conduct a 30(b)(6) deposition of FNMA personnel and of Sperry so that CUMIS may confirm the types of documents that were produced in this last minute production.

In conclusion, CUMIS respectfully requests that: 1) the court compel Sperry to fully respond to interrogatories requesting Sperry to identify the false trial balances  (interrogatory 21), the dates in which the loans were sold to FNMA (interrogatory 17), and all payments Sperry received on loans which relate to Sperry's alleged loss (interrogatory 18); 2) Sperry produce indices for the 1.7 million documents produced on the last day of discovery; and 3) CUMIS  be permitted to depose Sperry and FNMA 30(b)(6) witnesses

---

[1] Sperry is a New York based credit union.  Under New York law, encumbrancers', including mortgagees', rights are only protected if they are a "bona fide encumbrancer for value" without notice of fraud which would taint their rights as encumbrancers or mortgagees.  N.Y. REAL PROPERTY LAW § 266; *Mathurin v. Lost & Found Recovery, LLC*, 65 A.D.3d 617, 618 (2011); *Thomas v. LaSalle Bank Nat'l Assoc.*, 79 A.D.3d 1015, 1017 (2010); *Fischer v. Sadov Realty Corp.*, 34 A.D.3d 630, 631 (2006).

[2] In addition, it seems clear that Sperry cannot suffer a loss until the loans were sold for consideration to a third party, and until title to the loans is resolved.

The Honorable Michael A. Shipp
Re: Sperry Associates Fed. Credit Union v. CUMIS Ins. Society, Inc.
    Case No. 10-CV-00029-DRD-MAS
July 28, 2011
Page 3

regarding Sperry's voluminous last minute production.

Very truly yours,

s/Arthur Aizley

Arthur Aizley
Valerie Rojas
Sedgwick LLP

LA/1068432v2