Arthur H. Aizley (AA-5049)

SEDGWICK, LLP
125 Broad Street, 39th Floor
New York, New York 10004-2400
(212) 422-0202

Michael R. Davisson (*Pro Hac Vice*)
Valerie Rojas (*Pro Hac Vice*)
SEDGWICK, LLP
(213) 426-6900
801 S. Figueroa Street, 19th Floor
Los Angeles, CA 90017

Attorneys for Defendant
CUMIS INSURANCE SOCIETY

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

-------------------------------------------------------------------X
SPERRY ASSOCIATES FEDERAL CREDIT UNION,

                Plaintiff,

    -against-

CUMIS INSURANCE SOCIETY, INC.,

                Defendant.
-------------------------------------------------------------------X

Case No. 10-CV-00029 (DRB) (MAS)

**ORAL ARGUMENT REQUESTED**

**CUMIS INSURANCE SOCIETY'S ("CUMIS") REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CUMIS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ...................................... 1

II. LEGAL ARGUMENT ................................................................................................ 3

    A. Rules of Contract Interpretation. .................................................................. 3

    B. CU National Was Not Acting As A "Servicing Contractor" At The Time It Allegedly Transferred Mortgage Notes to US Mortgage ........................... 4

    C. There is No Evidence That CU National Sold or Assigned Sperry Mortgages to US Mortgage. ....................................................................... 7

    D. Sperry's Argument that CU National Transmitted Fraudulent Servicing Reports, and that The Reports Caused Sperry a Covered Loss, is Not Supported by the Evidence. ............................................................................ 8

    E. Sperry's Argument That US Mortgage Was An Employee While Selling Sperry Loans Is Illogical And Ignores The Plain Meaning Of The Bond Language ....................................................................................................... 9

    F. CU National Was Not An "Employee" Under The Bond As A Processor Of Checks, Clearinghouse Items Or Accounting Records ........................... 10

    G. Sperry Cannot Recover Under the Bond Because It Has Not Shown an Actual Loss Resulting Directly From the Dishonest Acts of an Employee. 12

    H. Sperry's Bad Faith Claim Fails as a Matter of Law. .................................... 13

III. CONCLUSION ...................................................................................................... 15

## **TABLE OF AUTHORITIES**

**PAGE**

**Federal Cases**

*Arch Ins. Co. v. Precision Stone, Inc.*
  584 F3d 33, 42 (2nd Cir. 2009) .................................................................................10

*Eskimo Pie Corp. v. Whitelawn Dairies, Inc.*
  284 F.Supp. 987, 994 (S.D.N.Y.1968) ........................................................................4

*First National Bank of Manitowok v. Cincinnati Ins. Co.*
  485 F.3d 971, 977 (7th Cir. 2007) ...............................................................................4

*Sharp v. Fed. Sav. & Loan Ins. Corp.*
  858 F.2d 1042, 1046 (5th Cir.1988) ............................................................................4

*Walk-In Medical Centers, Inc. v. Breuer Capital Corp.*
  818 F.2d 260, 263 (2d Cir. 1987) ................................................................................3

**State Cases**

*Crespo v. City of New York/Nationwide Prop. & Cas. Insur. Co.*
  2 Misc.3d 1008 (A), 2004 WL 737536 *4 (N.Y. Sup. 2004) .....................................11

*John Hancock Mut. Life Ins. Co. v. Carolina Power and Light Co.*
  717 F.2d 664, 670 (2nd Cir. 1983)..............................................................................11

*North Jersey Savings & Loan Ass'n v. Fidelity & Deposit Co. of Maryland*
  283 N.J. Super. 56, 660 A.2d 1287, (1993)..........................................................6, 7, 14

*Racon Manufacturing v. Ferraro*
  199A.D. 2d 999, 1000, 605 NYS 2d, 591 (1983).......................................................12

*Sukup v. State*
  19 N.Y.2d 519, 522, 227 N.E.2d 842, 844 (1967) .....................................................13

LA/1139703v1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     INTRODUCTION AND SUMMARY OF ARGUMENT**

In opposing CUMIS Insurance Society Inc.'s ("CUMIS") motion for summary judgment, Sperry Associates Federal Credit Union ("Sperry") asserts two new theories of coverage. First, Sperry argues that the dishonest acts for which it seeks coverage under the Credit Union Bond (the "Bond") was the fraudulent "assignment" of Sperry loans from CU National (its loan originator and servicer) to US Mortgage, the entity that sold the Sperry loans on the secondary market. Second, Sperry argues for the first time that CU National was an "employee" under the Bond because it was a "processor" of checks, clearinghouse items and accounting records.

However, while Sperry's new coverage arguments should be rejected by this court as Sperry failed to assert these coverage claims in its pleadings, neither of these new theories is supported by the facts of this case, or by the plain language of the Bond. As an initial matter, there is no evidence that CU National "assigned" or sold Sperry loans to US Mortgage. Moreover, even if CUMIS were to assume arguendo that CU National fraudulently transferred Sperry loans to US Mortgage as part of the fraudulent scheme to "sell" Sperry loans to Fannie Mae, there is no question that CU National would not have been acting in its capacity as Sperry's loan servicer when engaged in such conduct. As the Bond only provides coverage for losses resulting from CU National while actually

collecting and recording borrowers' monthly loan payments, there would be no coverage under the Bond for such fraudulent transfers.[1]

Similarly, Sperry's new argument that CU National is a covered employee as a "processor" is also without merit. CU National cannot be considered a "processor" under the Bond if the only means by which it is a processor is by performing the very duties that render it a "servicing contractor." The rules of contract interpretation are clear that the more specific provision of an insurance contract will be given effect over the more general provision.

Additionally, despite Sperry's protestations, the fact remains that Sperry cannot show that it has suffered an actual, direct loss as required under the Bond. Given the unique facts of this claim (including the fact that CU National continued to remit monthly payments to Sperry on the subject loans after the fraudulent "transfers"), and the unsettled question of whether Michael McGrath's actions were effective in transferring ownership of the loans, Sperry cannot, at this juncture, demonstrate that it has suffered and actual loss of monies or title.

Finally, while Sperry cannot recover for any alleged "bad faith" as the Bond does not provide coverage for the claim, given the complexity of the factual and legal issues

---

[1] This result would not change even if the Court accepts Sperry's contention that CU National created servicing reports that identified the sold loans as part of Sperry's portfolio, as the creation of such reports would not have been undertaken while servicing Sperry loans. Regardless, as the evidence does not support Sperry's contention that CU National sent such fraudulent reports, such an allegation is simply irrelevant to this dispute.

involved in this claim, neither CUMIS' coverage positions nor its filing of the Wisconsin declaratory relief action can be considered made in "gross disregard" of its obligations under the Bond, justifying a finding of "bad faith."

For these reasons, CUMIS prays this court to grant its Motion for Summary Judgment, on in the alternative, Motion for Partial Summary Judgment.[2]

## II.   LEGAL ARGUMENT

### A.   Rules of Contract Interpretation.

In the instant coverage dispute, the parties agree that the terms of the Bond are clear and unambiguous and should be given their plain meaning. Sperry also argues, though, that in the event this Court finds the Bond language to be ambiguous, the rules of construction require that it be interpreted against CUMIS, the insurer. However, Courts have consistently held that a fidelity policy is not a contract of adhesion as such policies have been negotiated between the surety association and banking trade groups. Thus, even when ambiguous, rules of construction do not call for fidelity policies, like that here, to be construed against the insurer.[3] See, *First National Bank of Manitowok v.*

---

[2] For the sake of brevity, CUMIS will not restate each of the facts provided in its opening brief, and incorporates those facts by reference. Each fact was included in CUMIS' Statement of Uncontroverted Facts and supported by competent evidence, as required by federal rules of civil procedure and local rules. Conversely, Sperry has failed to add any of its own "facts" to its Response to CUMIS' Statement.

[3] Of course, in deciding whether the Bond language is ambiguous, the Court should follow the guidance of Court in the seminal case of *Walk-In Medical Centers, Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir. 1987). There, the Court stated,

3

*Cincinnati Ins. Co.,* 485 F.3d 971, 977 (7th Cir. 2007); *Sharp v. Fed. Sav. & Loan Ins. Corp.,* 858 F.2d 1042, 1046 (5th Cir.1988).

> **B.     CU National Was Not Acting As A "Servicing Contractor" At The Time It Allegedly Transferred Mortgage Notes to US Mortgage**

In its opposition brief, Sperry seemingly concedes that the fraudulent sale of Sperry loans to Fannie Mae on the secondary market is not covered under the Bond—which requires the loss to result from dishonest acts in the servicing of loans-- and thus posits a new theory of coverage.  Sperry now argues that the loss, in fact, occurred when the loans were "assigned" or sold from CU National, Sperry's loan servicer, to US Mortgage.  The subsequent fraudulent sales by US Mortgage to Fannie Mae, Sperry argues, were simply the mechanism by which CU National profited from the initial fraudulent transfers and are not truly at issue here.[4]  As CU National serviced (and originated) Sperry's loans, plaintiff argues that CU National must have been acting as a servicer at the time it wrongfully "assigned" the loans to US Mortgage.

---

> An ambiguous' word or phrase is one capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customary practices, usages and terminology as generally understood in the particular trade or business.

*Id.,* quoting *Eskimo Pie Corp. v. Whitelawn Dairies, Inc*., 284 F.Supp. 987, 994 (S.D.N.Y.1968).

[4]  Of course, this position is contrary to that previously taken by Sperry.  In its amended complaint, Sperry asserted that the fraud occurred in the unauthorized selling of loans to Fannie Mae.  In its pleadings, Sperry never asserted that the fraud at issue—the fraud which establishes coverage—is the purported "assignment" of the subject mortgages from CU National to US Mortgage.

However, there are two major flaws in Sperry's coverage analysis. First, Sperry continues to ignore that, under the plain language of the Bond, CU National will only be deemed a covered "employee" when it is actually performing loan servicing functions, i.e. when it is collecting and recording the borrowers' monthly payments. Thus, even if CU National indeed wrongfully "assigned" mortgage notes to US Mortgage (which is contrary to the evidence, as discussed below), there would still be no coverage under the Bond because CU National would not have been acting as an "employee" at the time of the fraud. This is because the transferring of mortgage documents to US Mortgage--an entity whose sole job was to sell loans on the secondary market and had no loan servicing functions-- was not done in the furtherance of loan servicing functions.[5]  Therefore, such a fraudulent transfer of mortgage notes from CU National to US Mortgage would still not be covered.

To hold otherwise and find that because CU National performed loan servicing, any involvement by CU National in the fraudulent scheme would lead to coverage, would effectively rewrite the Bond language to delete the phrase, "*only while performing such services.*"  Indeed, this is exactly the point made by the court in *North Jersey Savings &*

---

[5]  To underscore this point, Swapan Roy, the employee in charge of servicing Sperry loans (i.e. collecting and recording monthly loan payments), was unaware of the fraudulent scheme. Since Roy was not involved in the fraudulent scheme, Roy could not be the person Sperry claims fraudulently "assigned" the loans from CU National to US Mortgage. Whomever Sperry asserts did engage in these fraudulent transfers (Sperry doesn't indentify an individual), that person was undoubtedly *not* involved in servicing the Sperry loans, as that job fell exclusively to Roy.

5

*Loan Ass'n v. Fidelity & Deposit Co. of Maryland*, 283 N.J. Super. 56, 660 A.2d 1287, (1993), when it rejected the insured's argument that the fraud of a mortgage company in originating loans would be covered because the mortgage company was also performing loan servicing functions at the time of the loss. The court stated,

> To interpret this bond as expansively as North Jersey contends, is to ignore the unambiguous definition of a "servicing contractor" and particularly the subordinate clause of the definition. The Rider amends the bond by adding to it an undertaking to provide coverage for the dishonest and fraudulent conduct of a "servicing contractor." The definition of "servicing contractor" restricts that coverage to a servicing contractor "while actually performing such services. . . ." This clause clearly and unambiguously limits coverage for the defaults of a servicing contractor to those instances in which the servicing contractor is actually collecting monies, recording the collections, and performing related acts. *Id.* at 72.

In so holding, the *North Jersey* court specifically rejected the very argument that Sperry appears to be making here-- that coverage would lie for non-servicing activities as long as the contractor was contemporaneously performing loan servicing. The court stated,

> The language does not permit an interpretation that the Rider covers the conduct of a servicing contractor when it is performing services of some other kind or acting in some other capacity—*even in the same transaction*.
> It is coincidental, only, that in this transaction the originator of the mortgage and the servicing contractor are one. To elevate that coincidence to a reasonable expectation would violate even the special rules governing interpretation of insurance policies. *Id.(emphasis added.)*

Sperry asks this court to ignore *North Jersey,* contending that, since it was decided by a New Jersey court, it does not apply to a case decided under New York law. However, as *North Jersey* is the only reported decision addressing the "servicing

6

contractor" issue present here, it provides strong guidance for this court and should be followed. This is especially true as the *North Jersey* court did nothing more than interpret the Bond language based on its plain meaning. To interpret the Bond as Sperry demands would violate the language of the Bond and the laws of contract interpretation.

### C. There is No Evidence That CU National Sold or Assigned Sperry Mortgages to US Mortgage.

Second, while any "assignment" of mortgage notes from CU National to US Mortgage would not create a covered loss for the reasons discussed above, Sperry's new coverage argument also fails as there are no facts supporting Sperry's contention that CU National sold or legally assigned mortgage notes to US Mortgage. Both CUMIS and Sperry agree that McGrath effected the fraud by signing his name to the assignments and allonges, and representing that he was the "AVP," or "assistant vice-president" of *Sperry*, and thus authorized to make the transfer from Sperry to *US Mortgage*. In other words, there is no question that the assignment, or sale, of the loans proceeded from Sperry to US Mortgage to Fannie Mae. CU National was never in the ownership link, and had no ability to "assign" loans to anyone.[6] As there is no evidence that CU National "assigned" or otherwise sold mortgage notes from CU National to US Mortgage, Sperry's argument for coverage arising from such facts fails as a matter of law.

---

[6] In fact, in its Response to CUMIS' Undisputed Material Facts, No. 71, Sperry admits that CU National never sold Sperry loans on the secondary market. Rather, CU National's role (after loan origination) was limited to collecting and recording the borrowers' monthly loan payments.

**D. Sperry's Argument that CU National Transmitted Fraudulent Servicing Reports, and that The Reports Caused Sperry a Covered Loss, is Not Supported by the Evidence.**

Sperry also argues that the fraud of McGrath and his co-conspirators is covered because CU National generated false monthly servicing reports while servicing the loans. However, Sperry's argument in this regard is similarly without merit as it is not supported by the undisputed material facts. Swapan Roy, who performed the loan servicing duties for CU National on Sperry's account, testified that he is not aware of *any* false reports being sent to Sperry. Similarly, Leroy Hayden, the US Mortgage principal responsible for the Sperry account, testified at deposition that he was unaware of any false reports being sent to Sperry. As noted in CUMIS Reply to Sperry's Response to Defendant's Separate Statement of Material Facts, No. 35, Sperry has failed to provide this Court with any admissible evidence that CU National sent false servicing reports to Sperry[7].

However, even if Sperry could establish that CU National intentionally and dishonestly sent false monthly reports to Sperry (which it cannot), this would still not

---

[7] While Sperry refers to the Trial Balance Reports and the Remittance Reports, these documents do not establish that fraudulent reports were transmitted, and in any event, lack foundation for the reasons specified in CUMIS' Reply to the Statement of Material Facts. Other than the Trial Balance Reports and Remittance Reports, the only other "evidence" Sperry proffers is the deposition testimony of McGrath. However, in his testimony, McGrath admitted that he didn't specifically recall when he sold Sperry loans and doesn't know whether he actually reviewed any Sperry servicing reports. McGrath stated that he would have relied on Hayden to prepare reports, but, again, Hayden doesn't recall whether false reports were sent to Sperry. Thus, the evidence simply does not establish that Sperry was sent false servicing reports.

create coverage under Insuring Agreement A because such conduct did not cause Sperry a loss. Again, the loss at issue here arose when the mortgage notes were fraudulently transferred as part of McGrath's scheme to sell Sperry loans and misappropriate the proceeds. As discussed in CUMIS' moving papers, any false recording after the unauthorized sale did not cause the loss—it simply concealed it.

> E. **Sperry's Argument That US Mortgage Was An Employee While Selling Sperry Loans Is Illogical And Ignores The Plain Meaning Of The Bond Language**

Sperry also continues to argue that US Mortgage was acting as an employee when it sold Sperry loans on the secondary market because US Mortgage was in fact "collecting and recording payments on real estate mortgages" as required by the Bond. Under Sperry's analysis, "payments" include proceeds from the sale of loans to investors. However, as discussed in CUMIS' opening brief, such an interpretation ignores the fact that, under the Bond, a "servicing contractor" is one who collects and records "payments *on* real estate mortgages or home improvement loans." A payment "*on*" a loan clearly refers to the monthly payments a borrower makes *on* his loan pursuant to the loan terms.

While Sperry objects to CUMIS' reference to federal statute and case law in interpreting the unambiguous language of the Bond, Sperry does not respond to CUMIS' argument regarding the significance of the term "on" in the foregoing Bond language. Sperry's inability to articulate an argument in response is telling. Furthermore, in Sperry's Response to CUMIS' Statement of Undisputed Material Facts, Sperry

9

repeatedly admits that, as a loan servicer, CU National collected and recorded the monthly loan payments made by borrowers on Sperry loans. See, Sperry's Response to CUMIS' Statement of Undisputed Material Facts, Nos. 6, 8, 12. Thus, even Sperry concedes that this is the common meaning of loan servicer.

As the definition of a "servicing contractor" under the Bond clearly and unambiguously refers to one who collects and records the monthly payments made by borrowers *on* their loans (and does not include the sale of loans on the secondary market), there is no coverage for the unauthorized sale of Sperry loans by US Mortgage.

  **F.** **CU National Was Not An "Employee" Under The Bond As A Processor Of Checks, Clearinghouse Items Or Accounting Records**

In its opposition papers, Sperry argues for the first time that the unauthorized sale of its loans is covered under the Bond because CU National was a "processor" of checks, clearinghouse items or accounting records. However, Sperry fails to set forth any facts or evidence in its Response to CUMIS' Separate Statement to support this argument. For this reason alone, Sperry's new claim should be dismissed. Moreover, Sperry's latest claim that the Bond provides coverage for CU National as a "processor" should also be rejected because Sperry never asserted this claim in its pleadings. " *Arch Ins. Co. v. Precision Stone, Inc.,* 584 F3d 33, 42 (2nd Cir. 2009). Furthermore, to the extent that

LA/1139703v1

Sperry impliedly seeks leave to amend its complaint, such request should be denied as the time to assert new claims has long passed.[8]

In addition, Sperry's argument that the Bond provides coverage as CU National was a "processor" of checks, clearinghouse items and accounting records is without merit because CU National cannot be deemed a "processor" under the Bond if the only means by which it is a processor is performing the very duties that render it a "servicing contractor."  In other words, there would be no purpose for the existence of the "servicing contractor" coverage under Sperry's interpretation, as a "servicing contractor" would already be covered by the employee definition of "processor."  The effect would be that the limiting words, "*only while performing such services*" within the definition of "servicing contractor" would be written out of the Bond.  Such an interpretation would violate the rules of construction which require a court to give meaning to all of the policy's words and provisions.  See, *Crespo v. City of New York/Nationwide Prop. & Cas. Insur. Co.,* 2 Misc.3d 1008 (A), 2004 WL 737536 *4 (N.Y. Sup. 2004).

Furthermore, New York rules of contract interpretation mandate that where two provisions of an insurance contract are inconsistent, the more specific provision will be given effect.  See, *John Hancock Mut. Life Ins. Co. v. Carolina Power and Light Co.,* 717 F.2d 664, 670 (2nd Cir. 1983); *Racon Manufacturing v. Ferraro,* 199A.D. 2d 999, 1000,

---

[8] CUMIS also notes that it cannot directly address whether CU National "processed" checks, ACH transactions and accounting records because CUMIS has not had an opportunity to conduct discovery on this new claim.

605 NYS 2d, 591 (1983).  According to Sperry, while the Bond limits the definition of "servicing contractor" to persons performing loan servicing functions at the time of the loss, Sperry argues that no such limitation exists for "processor."  Thus, under Sperry's reading, in the context of a loan servicer, these two Bond provisions are inconsistent. Therefore, under the rules of construction, the more specific provision will be given effect.  As "servicing contractor" is the more specific provision (while "processor" is the much broader provision), it is coverage under the "servicing contract" provision that will control.

      **G.**    **Sperry Cannot Recover Under the Bond Because It Has Not Shown an Actual Loss Resulting Directly From the Dishonest Acts of an Employee**

Sperry's claim for coverage under the Bond also fails as Sperry has not suffered an actual loss "resulting directly from" the dishonest acts committed by an employee, as required by the Bond.  While Sperry argues that it lost property when McGrath fraudulently transferred the loans from Sperry to US Mortgage (the property being the notes that, according to Sperry, have value), this argument is not supported by the facts. First, it is unclear whether McGrath's actions were effective in transferring ownership of the notes, as detailed in Sperry's litigation with Fannie Mae.  Second, after McGrath executed the assignments and allonges (and up to the time that the fraud was discovered), Sperry continued to receive the borrowers' monthly payments on these loans.  The fact that CU National may have been remitting payments to Sperry out of a different account (which has not been proven) does not change this fact.   After the fraud was discovered,

12

all subsequent loan payments (along with the mortgage notes) were placed in escrow for the true owner. If Sperry prevails in its litigation with Fannie Mae, with the court holding that Sperry is and has always been the true owner of the loans, then Sperry will receive the monies and notes in escrow. Given these facts, Sperry cannot claim at this juncture that it has lost anything.

Furthermore, while Sperry claims to have settled the Fannie Mae action, Sperry submits no evidence of this fact to the court. Regardless, the settlement, Sperry admits, is tentative. While a settlement with Fannie Mae would not extinguish Sperry's obligation to prove that it lost ownership of the loans when McGrath signed his name to the loan documents, as no evidence of a settlement is before this court, it is a non-issue.

### H. Sperry's Bad Faith Claim Fails as a Matter of Law.

While Sperry continues to assert that CUMIS committed bad faith in denying coverage, Sperry cannot prevail on a bad faith claim as a matter of law because the Bond does not provide coverage for Sperry's claim. Furthermore, even if Sperry were to establish coverage, Sperry simply cannot, as a matter of law, sustain its burden of showing that CUMIS took a coverage position that "no reasonable insurer" would take, or that CUMIS grossly disregarded its policy obligations in denying coverage, as is required for Sperry to prevail in a bad faith cause of action. See, *Sukup v. State*, 19 N.Y.2d 519, 522, 227 N.E.2d 842, 844 (1967). In denying coverage, CUMIS has reasonably relied on both the language of the Bond limiting coverage to instances where a contractor is actually performing loan servicing functions, as well as the holding of

13

*North Jersey,* the only opinion on record addressing the Bond language in a similar context.

Sperry's assertions that CUMIS also acted in bad faith in failing to "address" other "bases for coverage" under the Bond, disputing whether false servicing reports were sent to Sperry, and arguing that Sperry must first establish that it lost ownership of the subject loans in order to establish a loss, are similarly without merit. As both the arguments and evidence set forth by CUMIS in its opening and reply brief demonstrate, CUMIS' position with regard to each of these issues has been well taken. Moreover, given the facts and evidence in this case, Sperry cannot validly argue that any of these positions represents a gross disregard by CUMIS of its obligations under the Bond, or constitutes a position that no other carrier would take.

Finally, while Sperry continues to argue that CUMIS acted in bad faith with regard to the Wisconsin declaratory relief action, Sperry's argument fails to acknowledge the context in which that action was filed and CUMIS' decision to enter into a tolling agreement. When CUMIS filed that action, it was faced with claims submitted by numerous credit unions in different jurisdictions seeking millions of dollars arising out of McGrath's scheme. The coverage and factual questions were complex. CUMIS filed the Wisconsin action not to gain an unfair advantage over Sperry, but to try to manage these claims and consolidate them all in one court. CUMIS did not immediately serve the complaint because credit unions like Sperry were also in the process of negotiating with Fannie Mae in an attempt to resolve the issue of the ownership of the loans.

14

CUMIS then entered into tolling agreements so that this latter process could unfold. Importantly, CUMIS had no duty to disclose the existence of the Wisconsin Action so long as it did not breach the terms of the tolling agreement, and as Sperry concedes, it didn't. Given these facts, CUMIS' conduct cannot be considered a gross disregard for its obligations, or conduct that no other insurer would have engaged in. Therefore, CUMIS' decisions in this regard cannot justify a finding of bad faith.

## III.   CONCLUSION

For the foregoing reasons, CUMIS prays this Court to grant CUMIS' Motion for Summary Judgment.

Respectfully submitted,

Dated:  February 9, 2012          SEDGWICK, LLP

By: /s/Arthur H. Aizley (AA-5049)
Arthur H. Aizley (AA-5049)
SEDGWICK, LLP
125 Broad Street
New York, NY 10004
Attorney for Defendant CUMIS Insurance Society, Inc.

Michael R. Davisson *(Pro Hac Vice)*
Valerie D. Rojas *(Pro Hac Vice)*
SEDGWICK, LLP
801 S. Figueroa Street, 19th Floor
Los Angeles, CA 90017

LA/1139703v1